## Jennie Sargent, Defendant in Error, v. McDonough & Company, Plaintiff in Error.

### Gen. No. 20,683.   (Not to be reported in full.)

Error to the Municipal Court of Chicago; the Hon. JOSEPH S. LaBUY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed January 27, 1916.

### Statement of the Case.

Action by Jennie Sargent, plaintiff, against McDonough & Company, a corporation, defendant, in the Municipal Court of Chicago, to recover money loaned. To reverse a judgment for plaintiff for $200, defendant prosecutes this writ of error.

Defendant is an Illinois corporation, having a capital stock of twenty-five shares, twenty-three of which were in the name of and owned by C. O. Garmire, one in the name of Elizabeth Garmire, and one in the name of one Young. In November, 1911, C. O. Garmire went to Portland, Oregon. The defendant was engaged in the publication of professional directories, and in November, 1911, was particularly engaged in publishing an architects' directory. It appears that Young was in charge of this work. It does not appear whether Young had a contract as to this publication, or, if so, what its terms were, save that in a letter by Garmire to his wife, dated March 4, 1912, he stated that Young was to pay all bills in connection with the publication, then pay $1,000 to the company, and that thereafter Young would be entitled to the entire proceeds of said directory. In this letter Garmire also directed his wife to receive all collections and to take charge of the office in general. In this letter it was also stated that Young was president, Garmire secretary and treasurer, and Mrs. Garmire vice-president.

On April 28th Garmire wrote his wife a letter, in the main directed to the publication of this architects' directory and Young's connection therewith. In this letter, Garmire said:

"I want to know what Young is doing. If nothing you better use the money there and send out solicitors for advertising don't pay over 25% and be careful of bad orders."

It further appeared that Mrs. Garmire continued in charge of the business and sent out solicitors as requested. She testified that she borrowed from plaintiff (her mother) the sum of $100 on October 8th, and a similar sum on November 26th which was used to pay the solicitors engaged in the interest of this architects' publication.

Plaintiff testified that she loaned this money to the defendant at the request of Mrs. Garmire, and that it was used for its benefit.

It appeared that all money received for defendant, after the letter of March 4th was deposited in the name of Garmire, and that no entries were made on the books of the defendant of the money claimed to have been borrowed by Mrs. Garmire from plaintiff, for use of the defendant.

Defendant, on its behalf, offered the deposition of Garmire taken in Portland, wherein Garmire stated that Mrs. Garmire was not authorized to borrow money for the company; and that the money borrowed from plaintiff was for his own benefit, and was deposited to meet checks drawn by him in Portland. He did, however, admit that this money was advanced by plaintiff to his wife; that he wrote Mrs. Garmire to look after the business and "get some solicitors and put them out on the Architects, one of the books published by this company."

D. G. Brennan testified for defendant that he was secretary and treasurer of defendant; that in May, 1913, Mrs. Garmire stated to him that she had a claim

for $200 against Garmire personally but not a claim against the company, and inquired whether all money had been paid to Garmire, saying that she hoped that all money had not been paid to Garmire so she could attach.

Mrs. Garmire testified that she told Brennan the claim was against the defendant and asked payment of it.

The case was tried by the court without a jury and the issues were found for plaintiff.

MILLS & HOLLY, for plaintiff in error.

BROWN, BROWN & BROWN, for defendant in error.

MR. PRESIDING JUSTICE PAM delivered the opinion of the court.

## Abstract of the Decision.

1. TRIAL, § 295*—*when erroneous refusal to hold propositions of law not available as error.* The erroneous refusal to hold propositions of law cannot be availed of as error where it appears that the propositions refused were submitted after the entry of findings and judgment.

2. APPEAL AND ERROR, § 1065*—*when assignment of error raises question of sufficiency of evidence to sustain findings and judgment.* An assignment of error that the court erred in finding for plaintiff in a case heard without a jury goes only to the question whether on the evidence the court was warranted in so finding the issues and in entering judgment thereon.

3. CORPORATIONS, § 516*—*when evidence sufficient to sustain finding that money was borrowed by officer for corporation.* In an action against a corporation to recover money borrowed for its use by one of its officers, where the defense was that the money was borrowed for the personal use of another officer thereof who was also its principal stockholder, a finding for plaintiff is warranted where there is evidence that such principal stockholder suggested to the officer borrowing the money that she borrow money to send out solicitors to secure advertising contracts for a publication published by defendant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

4. CORPORATIONS, § 266*—*when creditors' rights not affected by depositing of corporate funds in name of officer of corporation.* The action of an officer of a corporation in closing out the corporation's bank account and depositing corporation funds to the personal account of another officer thereof merely affects the internal management of the corporation and does not affect the rights of its creditors.

5. CORPORATIONS, § 516*—*what weight given to fact that officer made no entry of alleged loan on corporate books.* In an action against a corporation to recover money borrowed by an officer thereof for its use, and where the defense is that such officer had no authority to borrow money for the corporation, the fact that such officer made no entry of the transaction on the books of the corporation is a material but not a controlling fact which should be taken into consideration in determining the issues.

6. CORPORATIONS, § 369*—*when liable for money borrowed by officer without authority.* Where a corporation has had the use of money borrowed for the purpose of paying its expenses, it is liable for its repayment although borrowed by one having no authority to borrow it.

7. CORPORATIONS, § 516*—*what weight given to affidavit by seller of stock regarding amount of indebtedness as against creditors.* Where one buying a controlling interest in the stock of a corporation takes an affidavit from his vendor as to the amount of outstanding indebtedness of the corporation at the time of the sale of the stock, such affidavit is not available as against creditors unless such creditors had knowledge thereof, and then only as a material but not controlling circumstance affecting the issue.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.